UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| J.P. MORGAN CHASE BANK, N.A. and J.P. MORGAN SECURITIES, LLC, | |
| Plaintiffs, | No. 11 CV 6902 |
| v. | Judge James B. Zagel |
| JEFFREY AND SHELLI McDONALD, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

On March 21, 2013, I requested further briefing on a series of jurisdictional and procedural questions that I wanted clarification over before ruling on Plaintiffs' motion for default judgment. The parties have briefed the issues and I now see that Count II should be dismissed without prejudice to future litigation in state court.

A.  BACKGROUND

In July 2007, Defendants Jeffrey and Shelli McDonald, husband and wife, opened two investment accounts with the Plaintiffs: a JPMorgan Investment Management Account with Plaintiff JPMorgan Chase Bank, N.A. (the "Bank") and a JPMorgan Asset with Brokerage Account with JPMorgan Securities, LLC (JPMS). The two accounts were governed by different agreements that set out the legal terms and conditions for each account. The key distinctions between the two agreements' terms were that 1) the Bank could exercise investment discretion over the Investment Management Account while JPMS could not exercise investment discretion over the Asset with Brokerage Account; 2) disputes with the Bank could be resolved only in state or federal court in the county where the office holding the account is located (and jury trial right

is waived), while disputes with JPMS were subject to FINRA Arbitration.

Defendants deposited roughly $6.5 million in the two accounts, with over 97 percent (or roughly $6.35 million) going into the Investment Management Account (also called the "Global Access Portfolio" or "GAP"). The remainder was put into the Asset with Brokerage Account (also called "the Apollo Fund"). In 2008, the GAP investment began to decrease in value. Defendants became concerned and told their account managers to withdraw the funds. However, due to the illiquid nature of the investments the managers were unable to move the funds. Ultimately, Defendants lost approximately $1.5 million of their GAP investment. Meanwhile, as of July 2011, Defendants' investment in the Apollo Fund had returned over $30,000 and the remaining share had appreciated considerably.

In July 2011, Defendants filed an arbitration claim with FINRA naming three Respondents: JPMS, Erin Ohlms and John Perry. Ohlms is a Managing Director with the Bank and a registered representative with JPMS. Perry is a former Bank employee who also appears to have been a registered representative with JPMS. Perry introduced Ohlms to the Defendants in June 2007. Ohlms exercised discretionary authority over Defendants' Investment Management Account with the Bank. She also recommended the Apollo Fund to Defendants, but did not exercise any discretionary authority over their JPMS investment.

On September 30, 2011, Plaintiffs filed the instant action seeking a declaration from this Court that the Bank was not liable to the McDonalds for the GAP account losses (Count I), and to enjoin the FINRA arbitration against JPMS, Ohlms and Perry (Count II). On December 13, 2011, I granted a preliminary injunction against the FINRA arbitration. On June 5, 2012, I dismissed Count I of the Complaint on the grounds that the McDonalds' potential conflict with the Bank was not sufficiently immediate or concrete to warrant declaratory relief. *Medimmune,*

*Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). On October 11, 2012, Plaintiffs moved for default judgment on Count II.

B.   ANALYSIS

Before ruling on the motion for default judgment, I requested briefing from the parties on a series of jurisdictional and procedural questions. My first question concerned the jurisdictional and remedial basis for maintaining the preliminary injunction following the dismissal of the declaratory action. Plaintiffs responded that Count II is a breach of contract claim that exists independently of Count I. Adopting this construction, I find that the Bank does not have standing to assert Count II. The "injury in fact" at stake in Count II is wrongful compulsion to arbitrate, but that affects only JPMS, Ohlms, and Perry—the parties against whom Defendants have filed FINRA claims. Defendants have never tried to force the Bank into arbitration and the Bank cannot seek an injunction on behalf of others. The Bank is dismissed from Count II.

Now that I fully understand the nature of Count II, I am granting Defendants 12(b)(7) motion to dismiss for failure to join a party under Rule 19.[1] Ohlms and Perry are both named parties in the underlying FINRA arbitration, and Defendants' claims against them stem from the same contractual provisions and conduct that give rise to Defendants' claims against JPMS. While I could enjoin arbitration against JPMS, I cannot enjoin proceedings against Ohlms and Perry absent their presence in this lawsuit. Thus, I find that Ohlms and Perry are "required parties" because I am unable to "accord complete relief among existing parties" absent their presence. Fed. R. Civ. P. 19(a).

---

[1] I also have considerable doubt over my ability to exercise personal jurisdiction over Defendants under Count II. The bases for personal jurisdiction in this case are 1) Section 17 of the JPMorgan General Terms and Services Agreement, in which Plaintiffs submitted to the exclusive jurisdiction of federal or state courts in Cook County, and 2) "transactions between the parties that occurred in the Chicago office of the Bank." The problem is that Section 17 of the General Terms and Services Agreement appears to apply only to disputes with the Bank, not JPMS (see Dkt No. 9, Ex. 5 at ¶ 6. Further, all relevant transactions between the parties appear to have occurred in Indiana, not Illinois.

The inquiry does not end there. Under Rule 19(b), I must next determine whether the litigation should proceed absent necessary parties. Rule 19(b) lays out four factors to consider:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;
(B) shaping the relief; or
(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

Fed. R. Civ. P. 19(b). The Supreme Court, in turn, has identified four underlying interests that Rule 19(b) "suggests": (1) the plaintiff's interest in having a forum; (2) the defendants' right to be safe from needless multiple litigation or inconsistent relief; (3) the interests of the outsider parties who should have been joined; and (4) the judicial and public interest in "complete, consistent, and efficient settlement of controversies." *Provident Trademens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109-11 (1968). I focus my inquiry around the *Provident Trademens* factors.

I find that all of the factors weigh in Defendants' favor. First, JPMS's interest in having a forum is diminished because (1) a satisfactory alternative forum exists (a suit concerning the arbitrability of Defendants' claims against JPMS, Ohlms, and Perry is currently pending in Indiana state court), *see Provident Trademens*, 390 U.S. at 109; (2) Defendants are the natural Plaintiffs in this case, so the traditional concern of allowing a plaintiff to "control" its own destiny actually works in reverse here.

Second, both sides have an obvious interest in avoiding multiple litigation and

inconsistent relief. Any determination I make about whether Defendants can compel JPMS into FINRA arbitration over losses to Defendants' GAP investment would not have *res judicata* effect as to Defendants' FINRA claims against Ohlms and Perry. Even if I were to permanently enjoin the FINRA arbitration against JPMS, there is a non-negligible chance that a different court could come out differently and determine the FINRA claims against Ohlms and Perry are arbitrable. I think it best that the same court have all parties in front of it to make one comprehensive ruling as to arbtirability.

Third, Ohlms and Perry have an obvious interest in a speedy resolution of the claims against them. Defendants' attempts to litigate their claims against Ohlms and Perry in state court have been stalled as a result of this case. My preliminary injunction had the effect of freezing the FINRA arbitration against Ohlms and Perry, but in fact that injunction can only reach Defendants' attempts to arbitrate with JPMS. In essence, Plaintiffs are trying to have their cake and eat it too—seeking injunctive relief for Ohlms and Perry while insisting that they are not required parties under Rule 19. That is a contradictory position and demonstrates why this case is not properly before me.

Finally, the judicial and public interest in complete and efficient resolution of this case favors dismissal from this Court. As explained above, nothing I do here can affect Defendants' claims against Ohlms and Perry—a second proceeding over the same arbitrability question is virtually assured if I keep this case. Plaintiffs argue that all claims could be consolidated in this Court if Defendants would bring their claims against the Bank, Ohlms and Perry as Rule 13 counterclaims, but Plaintiffs cannot evade Rule 19 requirements by recoloring them as Defendants' own Rule 13 problem. Further, Plaintiffs have not presented a single case in which Rule 13 operates to force a natural plaintiff to counterclaim on the merits when the natural

defendant seeks to enjoin arbitration. I am not satisfied with Plaintiffs' citations to Wright & Miller concerning the general operation of Rule 13 in the declaratory relief setting. Arbitration is different. The question of whether a dispute is arbitrable and the underlying merits of a dispute are separate and distinct legal questions, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)—I am aware of no authority in which a Court has determined the two to arise "out of the same transaction or occurrence" for Rule 13/*res judicata* purposes. This is not surprising. Forcing a natural plaintiff to counterclaim on the merits whenever a natural defendant seeks to enjoin arbitration would largely upend the purpose of the Federal Arbitration Act, as Defendants' counsel persuasively argued.

In my June 5, 2012 order, I rejected Defendants' argument that Plaintiffs were engaging in improper procedural fencing. I am no longer so sure. Whatever Plaintiffs' motives, it is now clear to me that this case belongs in state court.

C. CONCLUSION

For the foregoing reasons, Count II is dismissed without prejudice to any proceedings in state court.

ENTER:

*[signature: James B. Zagel]*

James B. Zagel
United States District Judge

DATE: June 27, 2013